KYMBERLY E. SPEER (SBN 121703)
KIMBERLY I. McINTYRE (SBN 184648)
KENNEY & MARKOWITZ L.L.P.
255 California Street, Suite 1300
San Francisco, CA 94111
Telephone:    (415) 397-3100
Facsimile:    (415) 397-3170
kspeer@kennmark.com
kmcintyre@kennmark.com

Attorneys for Defendant
AMERICAN AIRLINES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION – ECF PROGRAM

| | |
|---|---|
| EQUAAN D. SMITH and RUSSELL A. ROBINSON,<br><br>     Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.; DELTA AIR LINES, INC.; MICHELLE ROE; and, DOES 1-40,<br><br>     Defendants. | CASE NO.  C 08-0556 MEJ<br><br>**AMERICAN'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS (RULE 12(c))**<br><br>Date:      October 23, 2008<br>Time:     10:00 A.M.<br>Courtroom:  B – 15th Floor |

Kenney
&
Markowitz
L.L.P.

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     PLAINTIFFS' ALLEGATIONS ........................................................................ 2

     A.    The Parties ................................................................................................. 2

     B.    Factual Background .................................................................................. 2

          1.    Plaintiffs' International Itinerary ................................................ 2

          2.    Events Of December 19-20, 2007 ............................................. 2

          3.    Events at LAX ........................................................................... 4

          4.    Plaintiffs' Alleged Harm .......................................................... 5

     C.    Plaintiffs' Legal Claims ........................................................................... 5

III.    ARGUMENT ...................................................................................................... 6

     A.    Governing Standard .................................................................................. 6

     B.    The Montreal Convention Is Plaintiffs' Exclusive Remedy .............................. 6

          1.    Preemptive Scope of the Montreal Convention ....................................... 6

          2.    The Montreal Convention Governs Plaintiffs' Claims ........................... 7

          3.    The Montreal Convention Entirely Preempts Plaintiffs' State-Law Claims ........................................................................ 8

     C.    The Montreal Convention Does Not Permit Recovery Of Damages For Emotional Distress, Or Punitive Damages ................................. 9

     D.    Plaintiffs Are Limited To An Article 19 Claim For Delay ............................. 10

     E.    Several Of Plaintiffs' Individual Causes Of Action Fail To State Claims Upon Which Relief Can Be Granted ................................. 10

          1.    American Airlines Owed Plaintiffs no "Fiduciary" Duty .................... 11

          2.    Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails .................................... 11

          3.    Plaintiffs' Claim for Misrepresentation also Fails ............................. 12

          4.    Plaintiffs' own Allegations Invalidate Their Claim for Interference with Economic Advantage ................................. 12

IV.     CONCLUSION .................................................................................................. 13

Kenney
&
Markowitz
L.L.P.

-i-

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Baah v. Virgin Atlantic Airways Ltd.*, 473 F.Supp.2d 591, 595-596 (S.D.N.Y. 2007) .............. 7

*Blank v. Kirwan* (1985) 39 Cal.3d 311 ................................................................ 13

*Brandt v. American Airlines*, 2000 WL 288393 *1, *6 (N.D. Cal.) ........................................ 7, 9

*Careau & Co. v. Security Pac. Bus. Credit, Inc.* (1990) 222 Cal.App.3d 1371 ....................... 11

*Celador Int'l Ltd. v. Walt Disney Co.*, 347 F.Supp.2d 846, 852 (C.D. Cal. 2004)................... 11

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376 ........................ 12, 13

*Dryden v. Tri-Valley Growers* (1977) 65 Cal.App.3d 990 ........................................ 13

*Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 552 (1991) ...................................... 9

*El Al Israel Airlines v. Tseng*, 525 U.S. 155, 176, 119 S.Ct. 662 (1999) ......................... 7, 8

*In re Air Crash at Lexington, Kentucky*, 501 F.Supp.2d 902, 907-908 (E.D. Ky. 2007)................................................................................... 7, 8

*Jack v. Trans World Airlines*, 854 F.Supp.654, 658, 663 (N.D. Cal. 1994)............................ 9

*Karkomi v. American Airlines, Inc.*, 717 F.Supp. 1340, 1342-1343 (N.D. Ill. 1989).............. 11

*Knowlton v. American Airlines, Inc.*, 2007 WL 273794 *1 (D. Md.) ...................................... 8

*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1159 .......................... 13

*Kruger v. United Airlines, Inc.*, 481 F.Supp.2d 1005, 1009 (N.D. Cal. 2007)........................ 9

*Lemly v. Trans World Airlines, Inc.*, 807 F.2d 26, 28 (2d Cir. 1986)................................. 8

*Manion v. American Airlines, Inc.*, 17 F.Supp.2d 1, 4 (D.D.C. 1997) ...................................... 8

*Miller v. Indiana Hosp.*, 562 F.Supp. 1259, 1268 (WD PA 1983)........................................ 6

*Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989)..................................................... 6

*Paradis v. Ghana Airways Ltd.*, 348 F.Supp.2d 106, 111 (S.D.N.Y. 2004)........................ 7, 10

*Pasadena Live, LLC v. City of Pasadena* (2004) 114 Cal.App.4th 1089 ............................... 11

*Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141 ........................................ 11

*Quigley v. Pet, Inc.* (1984) 162 Cal.App.3d 877 ....................................................... 11

*Rogers v. American Airlines, Inc.*, 192 F.Supp.2d 661, 670 (N.D. Tex. 2001)........................ 7

Kenney
&
Markowitz
L.L.P.

1  *Rookard v. Mexicoach*, 680 F.2d 1257, 1260 (9th Cir. 1982) ................................................. 11

2  *Sassouni v. Olympic Airways*, 769 F.Supp. 537, 539-540 (S.D.N.Y. 1991) ........................... 10

3  *Stop Loss Ins. Brokers, Inc. v. Toland Medical Group* (2006) 143 Cal.App.4th 1036 ............ 12

4  *Strigliabotti v. Franklin Resources, Inc.*, 398 F.Supp.2d 1094, 1097 (N.D. Cal. 2005) ............ 6

5  *Twardowski v. American Airlines*, 535 F.3d 952, 959 (9th Cir. 2008)...................................... 9

6  *Vigilant Ins. Co. v. World Courier, Inc.*, 2008 WL 2332343 *1, *4 (S.D.N.Y.)....................... 6

7  *Weiss v. El Al Israel Airlines, Ltd.*, 433 F.Supp.2d 361, 365 (S.D.N.Y. 2006).................. 7, 10

8  **Other Authorities**

9  Warsaw Convention, 49 Stat. 3000 (1934), T.S. 876 reprinted in 49 U.S.C. § 40105............... 6

10  **Rules**

11  Article 19 of The Convention for Unification of Certain Rules for International
12    Carriage by Air, Done at Montreal on 28 May 1999, reprinted in S. Treaty
      Doc. No. 106-45, 1999 WL 33292734 (2000) (entered into force Nov. 4,
13    2003) .................................................................................................................................. 1

Kenney
&
Markowitz
L.L.P.

**TO PLAINTIFFS EQUAAN D. SMITH AND RUSSELL A. ROBINSON, *PRO SE*:**

**PLEASE TAKE NOTICE** that on October 23, 2008, at 10:00 A.M. in Courtroom B of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, defendant American Airlines, Inc. will and hereby does, move the Court for judgment on the pleadings as to plaintiffs' Complaint for Damages and for Injunctive Relief, or such separate causes of action as the Court deems proper.

This motion is brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and is made on the grounds that plaintiffs' Complaint, and each of its individual causes of action, fail to state a cause of action under which relief can be granted.

This motion will be based on this notice, the accompanying memorandum of points and authorities, plaintiff's Complaint for Damages and for Injunctive Relief, the complete files and records in this action, and such other and further evidence and argument as the Court may permit at the hearing on this matter.

DATED: September 9, 2008          **KENNEY & MARKOWITZ L.L.P**

By: _____
KYMBERLY E. SPEER
KIMBERLY I. MCINTYRE
Attorneys for Defendant
AMERICAN AIRLINES, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs' complicated story boils down to a "delay" claim arising out of international travel that is entirely governed by Article 19 of The Convention for Unification of Certain Rules for International Carriage by Air, Done at Montreal on 28 May 1999, reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000) (entered into force Nov. 4, 2003) ("Montreal Convention"). The Montreal Convention is plaintiffs' exclusive recourse for alleged damages occasioned by delay in their round-trip itinerary from San Francisco/Oakland, California to

Kenney
&
Markowitz
L.L.P.

{30076.302046 0134542.DOC}                    -1-
AMERICAN'S NOTICE OF MOTION AND MOTION FOR
JUDGMENT ON THE PLEADINGS (RULE 12(c))
CASE NO: C 08-0556 MEJ

Buenos Aires, Argentina.  Because plaintiffs assert only state law causes of action relating to their alleged delay in travel (and eventual abandonment of the itinerary in Los Angeles), their Complaint fails to state a claim upon relief can be granted and American is entitled to judgment as a matter of law.

## II.   PLAINTIFFS' ALLEGATIONS

### A.    The Parties

Plaintiffs Equaan D. Smith ("Smith") and Russell A. Robinson ("Robinson") are married and live in Alameda County, California.  (Complaint ¶ 1.)  Defendants include American Airlines, Inc. ("American") and Delta Airlines, Inc. ("Delta"), along with a defendant identified as "Michelle Roe" ("Michelle"), last name unknown.  Michelle allegedly is affiliated with Delta and works at its ticket counter at Oakland International Airport ("OAK").  (Complaint ¶¶ 2-3.)

### B.    Factual Background

#### 1.    Plaintiffs' International Itinerary

Plaintiffs allege that on December 11, 2007, they purchased airline tickets through Priceline.com for round-trip travel between San Francisco, California and Buenos Aires, Argentina.  (Complaint ¶ 4.)  Plaintiffs were scheduled to fly on American Flight #1915 from San Francisco International Airport ("SFO") to Los Angeles International Airport ("LAX") on December 19, 2007, then change planes and depart for Santiago, Chile at 2:25 p.m.  Plaintiffs were scheduled to arrive in Santiago the next morning, December 20, 2007, and from there fly to Buenos Aires, Argentina.  (Complaint ¶ 5.)  Plaintiffs' itinerary provided for further travel on LAN Airlines to Mendoza, Argentina, and thence by car to San Rafael to conduct business for two days and nights before returning to Buenos Aires.  Plaintiffs were scheduled to fly back from Buenos Aires on December 23, 2007, arriving at SFO on December 24, 2007.  (Complaint ¶6.)

#### 2.    Events Of December 19-20, 2007

Plaintiffs allege that on the morning of December 19, 2007, at approximately 4:00 a.m., American called and advised that their flight from SFO had been canceled; plaintiffs instead were to fly to LAX on Delta Flight #7760, departing that morning from OAK.  (Complaint ¶ 8.)  Plaintiffs duly went to the American ticket counter at OAK for check-in.  (Complaint ¶ 9.)  At

Kenney & Markowitz L.L.P.

1  first the American ticket agents allegedly directed plaintiffs to go to the Delta ticket counter, but

2  eventually "relented" and issued new tickets to reflect departure and arrival at OAK rather than

3  SFO. (*Id.*)

4      Plaintiffs then went to the Delta ticket counter and explained the situation to Michelle.

5  (Complaint ¶ 10.)  After some discussion, Michelle issued boarding passes for the Delta flight

6  from OAK to LAX.  (*Id.*)  During this process, Michelle allegedly walked from the Delta counter

7  to the American counter with all of plaintiffs' tickets – two adult printed e-tickets and plaintiffs'

8  paper ticket for their infant son – to "straighten out some technical issues." (*Id.*)

9      As plaintiffs proceeded through security they discovered that they did not have the paper

10  ticket for their infant son; they allege that Michelle had not returned this ticket to them at the

11  counter. (Complaint ¶11.)  Robinson returned to the Delta counter, where Michelle allegedly first

12  claimed that she saw Smith put the baby's ticket in her purse (*id.*) and, when no ticket was found

13  in Smith's purse, said that the baby's ticket must have been placed in plaintiffs' luggage.

14  (Complaint ¶13.)  An American supervisor said that she had given the ticket book back to

15  Michelle after stamping it. (Complaint ¶12.)

16      Smith, who at this point had also returned to the Delta counter, allowed plaintiffs' luggage

17  to be searched, and then was allowed to look behind the airlines' ticket counters and in Delta's

18  trash, as her husband had previously done. (Complaint ¶¶12, 13.)  Meanwhile, Robinson used the

19  computer terminal at OAK to print out the "closest substitute he could" to a paper ticket.

20  (Complaint ¶ 16.)  Plaintiffs allege that American and LAN Airlines would not issue a

21  replacement ticket for the baby, which meant that the baby would not be able to leave LAX on the

22  flight to Santiago, Chile. (Complaint ¶¶ 15, 16.)  Ultimately, plaintiffs found the baby's ticket on

23  American's counter.  (Complaint ¶ 13.)  They claim that either Michelle or an American ticket

24  agent left the ticket on the counter when Michelle went to "straighten out" trip details. (*Id.*)

25      Plaintiffs claim that, during this ticket search, Robinson told American, Delta and Michelle

26  that it was "critical for business reasons" that plaintiffs make this flight and their connections,

27  given the alleged tight schedule once in Argentina and high-season December travel to South

28  America. (Complaint ¶12.)  Parenthetically, plaintiffs note that all of the rental cars (presumably

Kenney
&
Markowitz
L.L.P.

1  in Mendoza) were rented, and that all of the connections inside of Argentina were sold out.

2  (Complaint ¶12.)  Plaintiffs also allege that they "could not miss this trip" and "had important

3  meetings" scheduled with "business people" and an "engineer" on December 21 and 22, 2007,

4  respectively, in San Rafael.  (Complaint ¶ 16.)  Plaintiffs do not allege that they shared these

5  details of their trip with either airline.

6      Plaintiffs assert that during the ticket search, the employees of Delta and American were

7  "derisive, abusive and condescending."  (Complaint ¶ 14.)  When Robinson called American to

8  "complain," he allegedly was told that the problem would have to be handled at the ticket counter.

9  (Complaint ¶ 14.)

10          **3.    Events at LAX**

11     Plaintiffs allege that the Delta flight was delayed in leaving Oakland, and so plaintiffs

12  missed their connecting flight upon arriving in Los Angeles.  (Complaint ¶ 17.)  Plaintiffs were

13  told to go to the American counter for tickets on another flight departing LAX for Buenos Aires

14  that same afternoon.  (*Id.*)  But at the ticket counter plaintiffs were told that the flight to Buenos

15  Aires was full; plaintiffs would have to stay overnight at the LAX Hilton, and fly to Argentina the

16  next morning.  (Complaint ¶ 18.)  Plaintiffs allege that this new itinerary would cause them to miss

17  their connecting flights within Argentina on December 20, 2007.  (*Id.*)  Plaintiffs allegedly told

18  this to an American ticket agent, but she told said there was nothing she could do.  (*Id.*)

19     American gave plaintiffs four $10 vouchers for lunch and dinner at the LAX Hilton.

20  (Complaint ¶ 19.)  Plaintiffs felt these vouchers were inadequate.  (*Id.*)  Smith called American to

21  complain, and allegedly was told that the only way to obtain more meal money was to return to the

22  American ticket counter and request more, though there was no guarantee that additional money

23  would be given.  (Complaint ¶ 20.)  Plaintiffs charge that they were thus required to spend their

24  own money to cover the expense of two "meager" meals at the LAX Hilton.  (Complaint ¶ 21.)

25  Plaintiffs further allege that American did not provide them with breakfast vouchers, and therefore

26  plaintiffs "were forced to eat ridiculously expensive and unsatisfactory food at LAX," again at

27  their own expense.  (Complaint ¶ 22.)  Plaintiffs subsequently decided that their trip "was in ruins"

28

Kenney
&
Markowitz
L.L.P.

{30076.302046 0134542.DOC}                -4-
AMERICAN'S NOTICE OF MOTION AND MOTION FOR
JUDGMENT ON THE PLEADINGS (RULE 12(c))
CASE NO: C 08-0556 MEJ

1   and that traveling to Argentina "would be a futile exercise." (Complaint ¶ 23.) American allowed

2   plaintiffs to return to OAK on December 20, 2007, flying on Delta. (Complaint ¶ 23.)

3           **4.**   **Plaintiffs' Alleged Harm**

4        Plaintiffs allege that they were "verbally abused and lied to" by American and Delta

5   employees. (Complaint ¶ 26.) Plaintiffs have not been refunded the value of their unused tickets

6   nor paid "other compensation." (Complaint ¶ 27.) Plaintiffs allegedly lost the "complete value of

7   their trip" and were "forced" to submit claims for the value of unused tickets purchased for travel

8   within Argentina on LAN Airlines and Aerolineas. (Complaint ¶ 24.) Plaintiffs allegedly missed

9   "important meetings" in San Rafael and lost the opportunity to enjoy time in one of their favorite

10  cities, Buenos Aires. (Complaint ¶ 25.)

11       Moreover, Robinson "lost the opportunity to eat an Argentine steak from the Pampas.

12  Robinson eats only Argentine beef." (*Id.*)

13         **C.**   **Plaintiffs' Legal Claims**

14       Plaintiffs' detailed factual allegations are the basis for the following seven causes of

15  action: (1) breach of contract; (2) breach of fiduciary duty; (3) breach of the implied covenant of

16  good faith and fair dealing; (4) intentional infliction of emotional distress; (5) misrepresentation;

17  (6) interference with economic advantage; and (7) negligence. The specific allegations in these

18  causes of action are discussed below as necessary; it is sufficient here to note that each cause of

19  action is based on California common law.

20       Plaintiffs' "Prayer" requests unspecified damages, costs and attorneys' fees. Further, and

21  though there is no pleaded claim for injunctive relief, plaintiffs demand an order directing

22  defendants "to create a toll-free call-in center staffed by live persons, able to speak with air-

23  travelers [sic] experiencing the kind of travel delays and run-around Plaintiffs suffered

24  December 19, 2007" and "create an office of accountability" providing various benefits to

25  travelers, such as replacement tickets, "timely, adequate meals" when airlines "place passengers at

26  hotels or otherwise strand passengers," and so forth. Plaintiffs also seek punitive damages

27  (Prayer A-E.)

28

Kenney
&
Markowitz
L.L.P.

## III.  ARGUMENT

### A.    Governing Standard

A motion brought pursuant to Federal Rule of Civil Procedure 12(c) challenges the sufficiency of the opposing party's pleadings.  It provides a vehicle for summary adjudication on the merits, after the pleadings are closed but before trial, which "may save the parties needless and often considerable time and expense which otherwise would be incurred during discovery and trial." *Miller v. Indiana Hosp.*, 562 F.Supp. 1259, 1268 (WD PA 1983).  A Rule 12(b)(6) motion and a Rule 12(c) motion for judgment on the pleadings raise the same challenge – whether the complaint states a claim upon which relief can be granted.  *Strigliabotti v. Franklin Resources, Inc.*, 398 F.Supp.2d 1094, 1097 (N.D. Cal. 2005).  If the complaint fails to articulate a legally sufficient claim, the complaint should be dismissed or judgment granted on the pleadings.  *Id.*   In order to streamline litigation and dispense with needless discovery and fact finding, courts are required to dismiss legal claims that are destined to fail, regardless whether they are nearly viable.  *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989) ("[n]othing in Rule 12(b)(6) confines its sweep to claims of law which are obviously unsupportable …. [A] claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.")  And while Rule 12(c) does not expressly provide for partial judgment on the pleadings, neither does it bar such a procedure.  It is common to apply Rule 12(c) to individual causes of action.  *Strigliabotti v. Franklin Resources*, 398 F.Supp.2d at 1097.

### B.    The Montreal Convention Is Plaintiffs' Exclusive Remedy

#### 1.    Preemptive Scope of the Montreal Convention

The Montreal Convention, which entered into force in the United States on November 4, 2003, replaced the Warsaw Convention[1] as the treaty currently governing international air carrier liability.  *Vigilant Ins. Co. v. World Courier, Inc.*, 2008 WL 2332343 *1, *4 (S.D.N.Y.).  Like its predecessor, the Montreal Convention's purpose is to promote uniformity in the laws governing airliner liability for the "international carriage of persons, baggage or cargo performed by

---

[1] The Convention for the Unification of Certain Rules Relating to International Transportation by Air, commonly known as the Warsaw Convention, 49 Stat. 3000 (1934), T.S. 876 reprinted in 49 U.S.C. § 40105.

Kenney
&
Markowitz
L.L.P.

1    aircraft." Montreal Convention at Art. 1. Many of the provisions of the Montreal Convention

2    closely resemble those of the Warsaw Convention because the drafters tried, wherever possible, to

3    embrace the language of the original Warsaw Convention and its various Protocols so as to not

4    disrupt the existing jurisprudence. *Baah v. Virgin Atlantic Airways Ltd.*, 473 F.Supp.2d 591, 595-

5    596 (S.D.N.Y. 2007); *In re Air Crash at Lexington, Kentucky*, 501 F.Supp.2d 902, 907-908 (E.D.

6    Ky. 2007).   Thus, the "common law" of the Warsaw jurisprudence is vitally important to

7    understanding the meaning of the Montreal Convention, and courts use cases interpreting the

8    Warsaw Convention to interpret similar Montreal Convention provisions. *Id.*

9        Article 29 of the Montreal Convention provides that "any action for damages, however

10   founded, whether under this Convention or in contract or in tort or otherwise, can only be brought

11   subject to the conditions and such limits of liability as are set our in this Convention..."   The

12   Convention provides the sole cause of action under which a claimant may seek redress for his

13   injuries. *El Al Israel Airlines v. Tseng*, 525 U.S. 155, 176, 119 S.Ct. 662 (1999); *Paradis v.

14   Ghana Airways Ltd.*, 348 F.Supp.2d 106, 111 (S.D.N.Y. 2004) (noting preemptive effect of

15   Montreal Convention is "substantially the same" as that of Warsaw Convention).  The Montreal

16   Convention preempts all claims, whether based on federal or state law, that fall within its scope.

17   *Weiss v. El Al Israel Airlines, Ltd.*, 433 F.Supp.2d 361, 365 (S.D.N.Y. 2006).  Conversely, if a

18   plaintiff's claims do not meet the Convention's requirements, they are nonetheless precluded from

19   filing suit based on local law.  The Convention provides the sole cause of action and remedy.

20   *Brandt v. American Airlines*, 2000 WL 288393 *1, *6 (N.D. Cal.); *Rogers v. American Airlines,

21   Inc.*, 192 F.Supp.2d 661, 670 (N.D. Tex. 2001).

22                **2.    The Montreal Convention Governs Plaintiffs' Claims**

23        Plaintiffs' claims are governed by the Montreal Convention even though Argentina is not a

24   signatory to the Convention[2], and plaintiffs never traveled on the international portion of their

25   ticketed itinerary. The Montreal Convention defines "international carriage" as "any carriage in

26   which . . . , the place of departure and the place of destination, whether or not there be a break in

Kenney
&
Markowitz
L.L.P.

27

28   [2] *See* Current List of Parties to the Montreal Convention, *available at*
     http://www.icao.int/icao/en/leb/mtl99.pdf.

{30076.302046 0134542.DOC}                    -7-

1   the carriage or transshipment, are situated . . . within the territory of a single State Party if there is

2   an agreed stopping place within the territory of another State, even if that State is not a State Party.

3   . ." Montreal Convention at Art. 1(2).  The Convention applies to a round-trip ticket from the

4   United States with an agreed stopping place within another state, even if that state is not a

5   signatory to the Convention.  *In re Air Crash at Lexington, Kentucky*, 501 F.Supp.2d at 908.

6   Moreover, the domestic portion of international travel qualifies as international flight governed by

7   the Convention if both the passenger and the air carrier are reasonably aware of the international

8   nature of the transportation.  *Manion v. American Airlines, Inc.*, 17 F.Supp.2d 1, 4 (D.D.C. 1997);

9   *Lemly v. Trans World Airlines, Inc.*, 807 F.2d 26, 28 (2d Cir. 1986) (A passenger is bound "by the

10   Warsaw Convention where he was aware of the international character of the flight, even though

11   he was injured on the domestic portion of the flight . . .")

12       *Knowlton v. American Airlines, Inc.*, 2007 WL 273794 *1 (D. Md.), is instructive.  In

13   *Knowlton*, the plaintiff flew from Baltimore, Maryland to the Dominican Republic was a party to

14   the Warsaw Convention but not the Montreal Convention.  The *Knowlton* court found that a one-

15   way trip ticket "would only be governed by the Warsaw Convention while a round-trip ticket

16   would be governed by the superseding Montreal Convention." *Id.* at *1 n. 1.  Since the Knowlton

17   ticket was round-trip from the United States, a signatory to the Montreal Convention, the

18   Convention applied. *Id.*; *see also: In re Air Crash at Lexington, Kentucky*, 501 F.Supp.2d at 908.

19       Likewise, here plaintiffs' itinerary consisted of round-trip tickets from the United States

20   with an agreed-upon stop in Buenos Aires, Argentina.  This itinerary meets the requirements of

21   Article 1 of the Montreal Convention.  *Knowlton, supra.* Accordingly, plaintiffs' claims are

22   governed solely by the Montreal Convention.

23       **3.    The Montreal Convention Entirely Preempts Plaintiffs' State-Law Claims**

24

25       In *El Al Israel Airlines v. Tseng*, 525 U.S. at 175, the United States Supreme Court

26   addressed the issue of whether passengers may bring state law claims when those claims are also

27   covered by the Warsaw Convention.  The Supreme Court found that Article 24 was "clear" in its

28   statement of "the Convention's preemptive effect" and, in so doing, held that the Convention

Kenney
&
Markowitz
L.L.P.

1    "precludes passengers from bringing actions under local law, even when they are unable to

2    establish liability under the Convention." *Id.* at 173-176. In short, under *Tseng* if the Warsaw

3    Convention does not recognize recovery for whatever damages plaintiffs claim to have suffered in

4    the course of international transportation, it "is not available at all." *Twardowski v. American*

5    *Airlines*, 535 F.3d 952, 959 (9th Cir. 2008). The same holds true for claims subject to the

6    Montreal Convention. *Kruger v. United Airlines, Inc.*, 481 F.Supp.2d 1005, 1009 (N.D. Cal.

7    2007).

8       Here, plaintiffs assert only various California common law claims, rather than a recognized

9    claim under a provision of the Montreal Convention. Under *Tseng* and *Kruger, supra,* as well as

10   the many cases applying the Warsaw Convention, all of plaintiffs' state-law claims are preempted

11   by the Convention. American is entitled to judgment on plaintiffs' entire Complaint for this

12   reason alone.

13

14      **C.**     **The Montreal Convention Does Not Permit Recovery Of Damages For Emotional Distress, Or Punitive Damages**

15

16      The Montreal Convention does not permit recovery of damages for purely emotional

17   distress, injunctive damages, or punitive damages. *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530,

18   552 (1991) (air carriers are not liable for emotional or psychological injuries unaccompanied by

19   physical injury under the Convention); *Kruger v. United Airlines, Inc.*, 481 F.Supp.2d at 1009

20   (punitive damages are not permitted under the Montreal Convention, and emotional distress

21   damages are limited to recovery for emotional distress flowing from physical injuries); *Brandt v.*

22   *American Airlines*, 2000 WL 288393 at *8. *See also: Jack v. Trans World Airlines*, 854

23   F.Supp.654, 658, 663 (N.D. Cal. 1994) (claims for punitive damages are not permitted under the

24   Warsaw Convention.) American therefore is entitled to judgment on plaintiffs' fourth cause of

25   action, Intentional Infliction of Emotional Distress, as well as any damage claims or prayer

26   seeking recovery for emotional distress, injunctive relief or punitive damages.

27

28

Kenney & Markowitz L.L.P.

AMERICAN'S NOTICE OF MOTION AND MOTION FOR
JUDGMENT ON THE PLEADINGS (RULE 12(c))
CASE NO: C 08-0556 MEJ

### D.     Plaintiffs Are Limited To An Article 19 Claim For Delay

Plaintiffs' Complaint does not explicitly claim damages for "delay in transportation," but that is the only reasonable interpretation of plaintiff's allegations in the context of the Montreal Convention. All of plaintiffs' alleged damages stem from the delay of Delta Flight #7760 from OAK to LAX on December 19, 2007, and their subsequent missed connection in LAX. Plaintiffs' lengthy tale of their infant son's misplaced ticket and the ensuing search is nothing more than a red herring, because plaintiffs successfully made it onto their ticketed Delta flight. Plaintiffs' complaints concerning the adequacy of the meal vouchers for use at the LAX Hilton likewise arise from the delayed Delta flight and plaintiffs' missed connection at LAX.

Article 19 of the Convention governs liability for damages resulting from delay of passengers, baggage, or cargo:

> The carrier is liable for damage occasioned by delay in the carriage by
> air of passengers, baggage or cargo. . .

As with other parts of the Montreal Convention, Article 19 creates an exclusive cause of action for delay in international transportation and preempts state law claims for delay. *Weiss v. El Al Israel Airlines, Ltd.*, 433 F.Supp.2d 361, 368 (S.D.N.Y. 2006); *Paradis v. Ghana Airways Ltd.*, 348 F.Supp.2d at 113-114 (a plaintiff could not avoid preemption by characterizing a delay claim as one for "nonperformance"); *see also: Sassouni v. Olympic Airways*, 769 F.Supp. 537, 539-540 (S.D.N.Y. 1991) (Article 19 of the Warsaw Convention provided plaintiff's exclusive remedy for claim that plaintiff missed religious holiday when he was "bumped.")  Article 22(1) of the Montreal Convention in turn limits the recoverable damages for delay to "4,150 Special Drawing Rights" per passenger.  Montreal Convention at Art. 22(1).  Currently, 1 Special Drawing Right ("SDR") equals $1.55 USD, making 4,150 SDRs equal to $6,442.13 USD.

### E.     Several Of Plaintiffs' Individual Causes Of Action Fail To State Claims Upon Which Relief Can Be Granted

Even if plaintiffs' state-law claims were not preempted under the Montreal Convention, which they are, several of plaintiffs' individual causes of action are invalid under California law.

Kenney
&
Markowitz
L.L.P.

1

### 1.    American Airlines Owed Plaintiffs no "Fiduciary" Duty

2    A "fiduciary" relationship is a "recognized legal relationship such as a guardian and ward,

3    trustee and beneficiary, principal and agent, or attorney and client." *Persson v. Smart Inventions,*

4    *Inc.* (2005) 125 Cal.App.4th 1141, 1160.  Plaintiffs' complaint clearly does not allege that such a

5    recognized relationship existed, and California is devoid of legal authorities to support any such

6    claim.  To the contrary, in *Rookard v. Mexicoach*, 680 F.2d 1257, 1260 (9th Cir. 1982) the Ninth

7    Circuit, applying California law, expressly stated that although "[a] common carrier is held to a

8    higher standard of care, … it is not a fiduciary."  *See also: Karkomi v. American Airlines, Inc.*,

9    717 F.Supp. 1340, 1342-1343 (N.D. Ill. 1989) (no fiduciary relationship between airline and

10    passenger).  American therefore is entitled to judgment on the second cause of action.

11

### 2.    Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails

12

13    California law recognizes an implied covenant of good faith and fair dealing in every

14    contract.  However, breach of the covenant does not necessarily give rise to a cause of action.

15    *Quigley v. Pet, Inc.* (1984) 162 Cal.App.3d 877, 889-890, 208 Cal. Rptr. 394.  The covenant is to

16    the effect that neither party to the contract will do anything deliberately to deprive the other of the

17    benefits of the agreement.  *Pasadena Live, LLC v. City of Pasadena* (2004) 114 Cal.App.4th 1089,

18    1092-1094, 8 Cal.Rptr.3d 233.  A valid claim for breach of the implied covenant must involve

19    something more than a breach of the contractual duty itself – *i.e.*, unfair dealing in the form of a

20    conscious and deliberate act that unfairly frustrates the agreed common purpose of the contract

21    and disappoints the reasonable expectations of the other party to the contract.  *Celador Int'l Ltd. v.*

22    *Walt Disney Co.*, 347 F.Supp.2d 846, 852 (C.D. Cal. 2004), citing *Careau & Co. v. Security Pac.*

23    *Bus. Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1394, 272 Cal.Rptr. 387.  A claim for breach of the

implied covenant based on the same allegations as breach of contract simply is superfluous.

24    Here, plaintiffs' breach of the implied covenant claim is indistinguishable from the claim

25    for breach of contract.  Plaintiffs do not, and cannot, validly allege that defendants altered and

26    delayed their own flight schedules in a deliberate and targeted attempt to keep plaintiffs from

27    timely arriving in Buenos Aires, Argentina, all with the intent to frustrate the benefits they were to

28

Kenney
&
Markowitz
L.L.P.

{30076.302046 0134542.DOC}                    -11-

1    receive under the contract of carriage.  The fact of the matter is that plaintiffs made their Delta

2    flight from OAK to LAX.  That flight just happened to be delayed, which impacted plaintiffs'

3    ability to make their connecting flight in LAX.  These facts do not demonstrate that either airline

4    acted deliberately with the intent to deprive plaintiffs of the benefit of their ticketed connections.

5    American therefore is entitled to judgment on this claim as a matter of law.

6              **3.    Plaintiffs' Claim for Misrepresentation also Fails**

7         California law does not allow a person to recover in tort for the breach of duties that

8    merely restate contractual obligations.  *Stop Loss Ins. Brokers, Inc. v. Toland Medical Group*

9    (2006) 143 Cal.App.4th 1036, 1041, 49 Cal.Rptr.3d 609.  Instead, California courts will generally

10   enforce the breach of a contractual promise through contract law, except when the actions that

11   constitute the breach violate a social policy that merits the imposition of tort remedies.  *Id.*

12        Here, plaintiffs' use of fraud terminology is not sufficient to invoke a social policy

13   independent of the contractual obligations embodied in the parties' contract of carriage.  Under

14   *Stop Loss, supra,* plaintiffs' allegations are invalid, and American should be granted judgment on

15   the fifth cause of action.

16              **4.    Plaintiffs' own Allegations Invalidate Their Claim for**
                 **Interference with Economic Advantage**
17

18        An action based on intentional interference with economic relations is governed by case

19   law principles that have their roots in the common law tort of inducing breach of contract.  *See*

20   *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 387-391, 45 Cal.Rptr.2d

21   436.  However, the California Supreme Court has emphasized the distinction between interference

22   with a contract and interference with prospective economic relations.  The law grants greater

23   solicitude to relationships that have ripened into agreements, while recognizing that relationships

24   short of that "subsist in a zone where the risks and rewards of competition are dominant."  *Id.* at

25   392.

26        The following elements are necessary to state a cause of action for intentional interference

27   with contract:  (1) the existence of a valid contract or some other economic relationship between

28   the plaintiff and a third party containing a probability of future economic benefits to the plaintiff;

Kenney
&
Markowitz
L.L.P.

1   (2) the defendant's knowledge of the existence of the relationship prior to its performance of the

2   interfering action; (3) intentional acts on the part of the defendant designed to disrupt the

3   relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately

4   caused by the defendant's acts. *Blank v. Kirwan* (1985) 39 Cal.3d 311, 330, 216 Cal.Rptr. 718;

5   *Dryden v. Tri-Valley Growers* (1977) 65 Cal.App.3d 990, 995, 135 Cal.Rptr. 720.   Where the

6   "economic relationship" subjected to "interference" is short of contractual, plaintiff must plead

7   and prove that defendant not only knowingly interfered with plaintiff's expectancy, but engaged in

8   conduct that was wrongful by some legal measure other than the fact of interference itself. *Della*

9   *Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th at 393.   An act is independently wrongful if

10  it is unlawful, which means that it must be conduct proscribed by some constitutional, statutory,

11  regulatory, common law, or other determinable legal standard.   *Korea Supply Co. v. Lockheed*

12  *Martin Corp.* (2003) 29 Cal.4th 1134, 1159, 131 Cal.Rptr.2d 29.

13      Here, plaintiffs have pled themselves right out of a claim for intentional interference with

14  prospective economic advantage by admitting that they did not inform defendants of their

15  "business" in Argentina until after the contract was made and the alleged interference had

16  occurred. *See* Complaint at ¶ 12. Moreover, plaintiffs did not – and again cannot – allege that the

17  defendants' purported conduct was independently wrongful and in violation of some

18  constitutional, statutory, regulatory, common law, or other determinable legal standard.   Plaintiffs'

19  flight was delayed and they missed their connection. End of story. Flight delays and cancellations

20  are commonplace in the world of commercial aviation.   Plaintiffs' interference cause of action

21  falls flat, and American is entitled to judgment on this claim as a matter of law.

22              **IV.   CONCLUSION**

23      For the foregoing reasons, American respectfully requests judgment on plaintiffs'

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

Kenney
&
Markowitz
L.L.P.

{30076.302046 0134542.DOC}

-13-

AMERICAN'S NOTICE OF MOTION AND MOTION FOR
JUDGMENT ON THE PLEADINGS (RULE 12(c))
CASE NO: C 08-0556 MEJ

1  complaint or such separate causes of action as the Court deems proper.

2

3  DATED:  September 9, 2008      **KENNEY & MARKOWITZ L.L.P**

4

5        By:_____

6           KYMBERLY E. SPEER
KIMBERLY I. MCINTYRE
Attorneys for Defendant
AMERICAN AIRLINES, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kenney
&
Markowitz
L.L.P.

{30076.302046 0134542.DOC}

-14-
AMERICAN'S NOTICE OF MOTION AND MOTION FOR
JUDGMENT ON THE PLEADINGS (RULE 12(c))
CASE NO: C 08-0556 MEJ